UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD JAMES CROMER #211902,

    Plaintiff,

v.                                                        Case No.  2:14-cv-191
                                                           HON.  GORDON J. QUIST

DENISE GALLIPPO et al.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Edward James Cromer, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Denise Gallippo and Robert White.  Defendants have now filed a motion for summary judgment based on Federal Rules of Civil Procedure 56a.  (ECF No. 35.)  Plaintiff has responded.  (ECF No. 40.)  This matter is now ready for decision.

Pursuant to a previous order, Plaintiff has two remaining claims in this case.[1] (ECF No. 27.)  In his first claim, Plaintiff alleges that Defendant White used excessive force in violation of the Eighth Amendment.  According to Plaintiff, the incident occurred on May 9, 2013, approximately 3-5 minutes after he was released from segregation.  PageID.7.  Plaintiff claims that Defendant White and Officer Junak approached him.  PageID.7, 299.  Officer Junak stated: "you want to fuck with my nurse?"  PageID.7.  Plaintiff was handcuffed, and Defendant White stated: "Your [sic] going back to the hole."  PageID.7.  Plaintiff claims that the handcuffs

---

[1] Plaintiff's response brief includes several additional claims such as retaliation and a claim of theft.  However, these claims were either not set forth in the complaint or dismissed for failing to exhaust the claims.  (ECF No. 27, PageID.262.)

were put on "very tight to cut off blood-circulation." PageID.8. Plaintiff further claims that while he was being escorted back to segregation, Defendant White dug his fingernails into Plaintiff's skin and made racially-motivated comments. PageID.8. Plaintiff alleges that he had "abrasions and marks on [his] arm." PageID.8.

In his second claim, Plaintiff asserts that Defendant Gallippo was deliberately indifferent to Plaintiff's serious medical needs when she refused to provide him with his medication on four different occasions. Plaintiff is prescribed several different medications to treat his hypertension. PageID.6. On April 9, 2013, Plaintiff alleges that Defendant Gallippo approached his cell with his medication. PageID.7. Plaintiff told Defendant Gallippo that he needed a minute to wash his hands. PageID.7. Defendant Gallippo responded by yelling "refusal" and walking away. PageID.7. On September 11, 2013, Plaintiff alleges that Defendant Gallippo refused to provide medications, which sent him into a "deep depression." PageID.10. Plaintiff was on suicide watch for the next two days. PageID.10. Finally, on March 12, 2014, and March 14, 2014, Plaintiff alleges that Defendant Gallippo again deprived him of his morning and afternoon medications. PageID.10.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The

evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff first claims that Defendant White used excessive force in violation of the Eighth Amendment during the incident on May 9, 2013. Specifically, Plaintiff claims that Defendant White tightened the handcuffs to cut off circulation, dug his fingernails into Plaintiff's arms, and called Plaintiff a "monkey." Defendants argue that the amount of force used was necessary to insure the safety of both Plaintiff and the escorting officer. Moreover, Defendants argue that Plaintiff never expressed any concern regarding his alleged injuries to any medical personnel.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary

and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

In *Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010), the Supreme Court emphasized that *Hudson v. McMillian*, 503 U.S. 1, 4 (1992), held that the fact that an inmate's injuries were "de minimis" is not itself a bar to an Eighth Amendment claim. The seriousness of the injury is not a threshold inquiry. *Wilkins*, 559 U.S. at 37-38 (quoting *Hudson*, 503 U.S. at 7). "The 'core judicial inquiry,' we held, was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). "'When prison officials maliciously and sadistically use force to cause harm," the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Id.* Nevertheless, the absence of serious injury is relevant as a factor in determining whether the use of force plausibly could have been thought necessary to the situation. *Id.*

In this case, Plaintiff has failed to establish that Defendant White used excessive force in violation of the Eighth Amendment. First, in his deposition, Plaintiff admitted that Officer Junak was the individual who handcuffed him, and not Defendant White. PageID.299. Thus, Defendant White cannot be the blamed for putting the handcuffs on too tight and "cutting off circulation." Second, the evidence shows that the three officers—Officer Junak, Officer Peterson, and Defendant White—were escorting Plaintiff back to segregation. PageID.303. The exact reason for putting Plaintiff back in segregation is not clear. Defendant White alleges that Plaintiff was refusing an order given by Officer Junak. PageID.399. Plaintiff alleges that the officers were putting him in segregation because he was either threatening a nurse or was suspected of stealing from another inmate's cell. Despite not knowing the exact reason for

escorting Plaintiff to segregation, the use of force to escort a perceived threat is not "totally without penological justification." *See Rhodes*, 452 U.S. at 346.  Finally, although it is not a dispositive factor, Plaintiff failed to show any serious injury.  Plaintiff alleges that he had marks and abrasions on his arm, but he never sought medical treatment.  PageID.306.  Perhaps most notable, Plaintiff's medical records show that a physician visited him the following day, and Plaintiff did not mention any marks, abrasions, or anything else about the incident.  PageID.312-313.  Therefore, in the opinion of the undersigned, Defendant White is entitled to judgment as a matter of law on the claim of excessive force in violation of the Eighth Amendment.

Plaintiff also alleges that Defendant White called him a racial slur—"a monkey." PageID.302.  An allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions.  *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x. 675, 677-78 (6th Cir. 2007) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude); *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Therefore, Plaintiff's claims regarding the use of a racial slur are properly dismissed.

In his second claim, Plaintiff alleges that Defendant Gallippo was deliberately indifferent to Plaintiff's serious medical needs when she refused to provide him with his medication to treat his high blood pressure. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendants argue that this case amounts to a delay in medical treatment; therefore, Defendants claim that this Court should apply the rule adopted in *Napier v. Madison Cty.*, 238 F.3d 739 (6th Cir. 2001). In *Napier*, the Sixth Circuit found that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* at 742. Defendants argue that Plaintiff's claim should be dismissed because he did not place any "verifying medical evidence" to establish the detrimental effect of the delay in medication.

However, the Sixth Circuit has since limited the "verifying medical evidence" requirement to "those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004). The Sixth Circuit further stated:

> Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.

*Id.* at 899.

In this case, according to his medical records, Plaintiff is prescribed multiple medications for his hypertension.[2] PageID.316. In the opinion of the undersigned, a reasonable trier of fact could find that Plaintiff's hypertension is an "obvious" medical need. *See*

---

[2] In Plaintiff's Affidavit, Plaintiff characterizes his disease as "Benign/Malignant Hypertension." PageID.393. However, Plaintiff's medical records state Plaintiff has Benign Hypertension. PageID.316.

*Copenhaver v. Hammer*, No. 1:05-CV-675, 2007 WL 2406957, at *4 (W.D. Mich. Aug. 20, 2007) ("It is a reasonable interpretation of *Blackmore* to find Plaintiff's underlying heart condition, which was evidenced by his prescribed drugs, is of such an obvious nature.") Therefore, Plaintiff is not required to provide "verifying medical evidence" to establish the detrimental effect of the delay in medication.

Nonetheless, Plaintiff has failed to show that a material issue of fact exists as to whether Defendant Gallippo was deliberately indifferent to his medical needs. On April 9, 2013, and September 11, 2013, the medical records state that Plaintiff received his medication from nurses other than Defendant Gallippo. PageID.321-325. On March 12, 2014, and March 14, 2014, the medical records state that Plaintiff "refused" to take his medication in the morning but still received his medication in the evening. PageID.326-327. Moreover, the medical records show that Plaintiff had a history of refusing to take his medication. PageID.311, 315.

In addition, the affidavits of fellow prisoners offered by Plaintiff do not create a material issue of fact. Tony Hurd's first affidavit (dated June 12, 2013) is not notarized or made under penalty of perjury. PageID.18. *See Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998) ("An unsworn affidavit cannot be used to support or oppose a motion for summary judgment."). In the affidavit dated September 8, 2013, Mr. Hurd discusses events that occurred on September 9, 2013. PageID.19. This affidavit is unreliable because it is dated before the alleged event took place. Even if the date was a mistake, Plaintiff does not allege that Defendant Gallippo withheld medication on September 9, 2013. In the affidavit dated September 11, 2013, Mr. Hurd describes only a personal altercation with Defendant Gallippo. PageID.20-22. Finally, in Tracy Boone's affidavit, he describes an event that occurred on August 23, 2013, which Defendant Gallippo was not involved in. PageID.22. Therefore, in the opinion of the

undersigned, Defendant Gallippo is entitled to judgment as a matter of law on the claim of deliberate indifference to serious medical needs.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 35.) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      August 29, 2016                    /s/ Timothy P. Greeley
                                               TIMOTHY P. GREELEY
                                               UNITED STATES MAGISTRATE JUDGE